**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **BRENDA ISABEL CERVANTES**, | § | |
| | § | |
| *Plaintiff*, | § | |
| **v.** | § | |
| | § | **EP-19-CV-00383-DCG** |
| **3NT, LLC**, | § | |
| | § | |
| *Defendant*. | § | |

**REPORT AND RECOMMENDATION**
**OF THE MAGISTRATE JUDGE**

On this day, the Court considered "Defendant's Amended Motion for Summary Judgment" ("Motion") (ECF No. 53), "Plaintiff's Response in Opposition to Defendant 3NT, LLC's Amended Motion for Summary Judgment" ("Response") (ECF No. 59), "Defendant's Reply to Plaintiff's Response in Opposition to Defendant's Amended Motion for Summary Judgment" ("Reply") (ECF No. 60), and "Plaintiff's Supplemental Response in Opposition to Defendant 3NT, LLC's Amended Motion for Summary Judgment" ("Supplemental Response") (ECF No. 68). On February 15, 2022, the Motion was referred to the undersigned by United States District Judge David C. Guaderrama pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rules Appendix C. (ECF No. 64.) For the reasons set forth below, the Court **RECOMMENDS** that the Motion should be **GRANTED IN PART** and **DENIED IN PART**.

1

# I.  BACKGROUND

## A.  Factual Background[1]

### 1.  Plaintiff's Employment and the ERISA Plan

As of March 9, 2019, Defendant 3NT, LLC ("Defendant" or "3NT") employed Plaintiff Brenda Isabel Cervantes ("Plaintiff" or "Cervantes") as an "over the road truck driver."  (ECF Nos. 1:2; 53:5.)  Plaintiff's employment involved "driv[ing] tractor/trailers and other commercial motor vehicles" between El Paso, Texas and Brownstown, Michigan to deliver auto parts.  (ECF No. 1:2.)

Defendant offers its employees (or "Participants"), including Plaintiff, an insurance policy ("Plan") not covered by the Texas Worker's Compensation Act but covered by the Employee Retirement Income Security Act ("ERISA").  (ECF Nos. 53:3–4; 53-1:46.)  Defendant serves as the Plan Administrator, while it appointed the insurance company Caprock Claims Management ("Caprock") to serve as the Claim Administrator for purposes of making benefits determinations. (ECF Nos. 53:4); *see* (ECF Nos. 53-1:38, 73; 59-6:2–4, 10, 14; 59-14:3.)  Relevant to this case, the Plan covers "Accidental Injury . . . to Participants sustained in furtherance of the business of the [Defendant] Company."  (ECF No. 53:4) (quoting (ECF No. 53-1:26)).  The Plan defines "Accidental Injury" as:

> an injury to a covered Participant which: (1) was unforeseen and unexpected; (2) occurred at a specifically identifiable time and place; (3) occurred by chance, unexpectedly, and/or not in the usual course of events; (4) resulted directly in bodily injury to the covered Participant; (5) occurred in Scope of Employment; (6) occurred during the pendency of this Plan; and (7) for which medical treatment was initiated within 30 days of the injury producing event.

(ECF No. 53-1:22.)

---

[1] While recounting the factual background, the Court addresses only the facts relevant to the immediate Report and Recommendation.

"[I]nitial receipt and continuing receipt of benefits is contingent upon [the Participant's] compliance with the terms and conditions of this Plan." (*Id.* at 33.) One such condition mandates that, when a Participant incurs an Accidental Injury, the Participant:

> *immediately* report in writing any Accidental Injury . . . to his Supervisor or other person designated by the Company. The Participant must report every Accidental Injury, regardless of the nature or severity. Failure to immediately report an Accidental Injury . . . may subject the Participant to disciplinary action up to and including termination and preclusion of benefits. For purposes of this requirement 'Immediately,' with regard to an Injury due to an Accident . . . , means no later than 24 hours after the end of the Participant's scheduled shift during which the Occurrence took place.

("Writing Requirement") (*Id.* at 37) (emphasis in original). The Plan also mandates that "[w]hen a Participant requests benefits, the Participant must furnish all information requested by the Plan Administrator, Claims Administrator or Third Party Administrator" ("Furnishing Requirement"). (*Id.* at 36.)

The Plan excludes benefits "for fees or services from Physicians or Providers that have not been prior approved or directed by the Plan" and for "[a]ny claim not timely reported." (*Id.* at 29); *see also* (*id.* at 36.) The Plan provides for an appeal procedure should Participants wish to appeal an adverse benefit decision. *See* (*id.* at 44–45.) The Plan also contains subrogation and arbitration provisions. (*Id.* at 33–36, 47–51.)

## 2. The Incident and Subsequent Reporting

Plaintiff alleges that on or about March 9, 2019, at approximately 10:00 or 11:00 p.m. Central Time near Pecos, Texas, she was driving a 2018 tractor trailer to complete a job for Defendant "when the tractor trailer had a blowout and mechanical issues," resulting in a collision that caused Plaintiff "serious personal injuries to [her] person and property" ("Incident"). (ECF No. 1:2–3); *see also* (ECF Nos. 53-1:53; 59-1.)

3

Within hours following the Incident, Plaintiff called her supervisor, safety manager Cesar Zapata ("Zapata"), to report the Incident, and Zapata instructed Plaintiff to undergo a drug test. (ECF Nos. 1:4; 59-1:1.)  Plaintiff also "communicated via text [message] in writing" with Zapata and Ruben Jasso ("Jasso"), the owner of 3NT.  (ECF No. 1:4); *see also* (ECF Nos. 53:5.) Approximately seven hours after the Incident, Plaintiff met with Zapata at a drug testing facility near El Paso, Texas and completed a drug test.  (ECF Nos. 1:4; 53-1:99; 59:5; 59-5.)

According to the images of cell phone text messages provided by both parties, Plaintiff texted Jasso on March 9, 2019, at 11:50 p.m., providing a phone number and the name of the officer who responded to the Incident.  (ECF Nos. 53:12–13; 53-1:65; 59-4:3.)  Plaintiff also provides an image of a text message sent from "Jhonathan Cervantes," Plaintiff's spouse, to "Cesar," presumably Zapata, first stating at 10:10 p.m. that there was an accident and then stating at 4:14 a.m. that "the tow trucks showed up" and that he was "taking [Plaintiff] to get a medical checkup."  (ECF No. 59-4:1.)  Although the dates of the text messages from Plaintiff's spouse are unclear, the Court presumes that they were sent on the evening of March 9, 2019, and the morning of March 10, 2019, respectively.  *See* (ECF Nos. 53-1:99–100; 59:5.)  On March 20, 2019, Plaintiff texted Zapata providing photographs of the Incident.  (ECF Nos. 53-1:62, 67–71; 59-4:5–9.)

On or about March 20, 2019, Plaintiff and Zapata met to discuss the Incident and Zapata gave Plaintiff an "Employee Report of Injury" form ("Injury Report Form" or "Form").  (ECF No. 59-1:1.)  The Form contained prefilled information including identifying information for Zapata and Plaintiff, Plaintiff's employment information, the Incident date, time, and location, and a notation that the injury did not require immediate emergency treatment.  (ECF No. 53-1:53.) Additionally, the Form listed "knee" as the injured body part and "fracture" as the type of injury. (*Id.*)  Further, the Form contained blank spaces with instructions to "describe the details of the

accident and how it happened" and to provide further details about medical treatment. (*Id.*) The Form required additional signatures for agreements regarding arbitration, subrogation, and release of medical records. (*Id.* at 54.) Plaintiff did not sign the Form because it "contained inaccurate and incomplete information regarding the [I]ncident and her injuries"—specifically, it listed the Incident cause as "unknown" and did not list all of the injured body parts and types of injuries that Plaintiff claims she sustained as a result of the Incident. (ECF No. 1:4); *see also* (ECF No. 59-1.) Plaintiff alleges that Defendant would not change the Form as she requested and would not allow her to make changes to the Form. (ECF Nos. 1:4–5; 59-1.) Defendant claims that it asked Plaintiff to fill in and sign the Form but she "flatly refused." (ECF No. 53:6.)

### 3. Coverage Claims

Plaintiff sought Plan coverage for medical treatment for her alleged injuries resulting from the Incident, including by her primary care physician, Dr. Frances Bean. (*Id.*) Defendant denied Plaintiff's coverage requests in two separate letters (collectively, "Benefit Denials"). (*Id.*); (ECF No. 59:7.) In the first letter dated April 10, 2019, Defendant denied Plaintiff's coverage request for her visits with Dr. Bean, Sun City Orthopaedics, and Foundation Therapy because those providers were "not authorized Providers as defined by the Plan" ("April 10 Denial"). (ECF No. 53-1:55.) Specifically, the letter says that Plaintiff did not "first receiv[e] authorization [from Defendant] for any such treatment" before seeking the treatment, as required by the Plan. (*Id.* at 57.) Then, in the second letter dated May 3, 2019, Defendant denied coverage for any medical consultation or treatment related to injuries from the Incident "because the sole writing Cervantes provided failed to satisfy the [Plan's] 'Reporting' requirement" and because "Cervantes refused to complete specific incident reporting documentation" ("May 3 Denial"). (ECF No. 53:6) *see* (ECF No. 53-1:59–61.)

5

On May 24, 2019, Plaintiff appealed the Benefit Denials. (ECF No. 53-1:62–63.)[2] In a letter dated July 3, 2019, Defendant's Appeals Committee denied Plaintiff's appeal and upheld the May 3 Denial, without addressing the April 10 Denial ("Appeal Decision"). (*Id.* at 72–75.) The Appeals Committee explained that it denied Plaintiff's appeal because Plaintiff failed to comply with the Plan's Furnishing Requirement when she refused to complete the Injury Report Form. (*Id.* at 73.)

**B. Procedural Background**

On December 30, 2019, Plaintiff filed her Complaint, alleging that 3NT violated her rights protected by ERISA. (ECF No. 1.) Specifically, Cervantes alleges that 3NT (1) interfered with her right to benefits in violation of 29 U.S.C. § 1140 (ERISA Section 510); (2) wrongfully denied her benefits in violation of 29 U.S.C. § 1132(a)(1)(B) (ERISA Section 502(a)(1)(B)); (3) breached its fiduciary duties by unreasonably denying her benefits in violation of 29 U.S.C. § 1132(a)(3) (ERISA Section 502(a)(3)) and 29 U.S.C. § 1109(a) (ERISA Section 409(a)); and (4) is equitably estopped, under what is known as "ERISA-estoppel," from denying her benefits. (*Id.* at 6–10.) Plaintiff seeks damages including for "past and future loss of wages and other employment-related benefits, past and future loss of benefits to which she is entitled under the Plan, medical bills, medical treatment, and other medical expenses incurred, damages to h[er] credit reputation, mental anguish, enhanced pain and suffering, consequential and incidental damages and attorney's fees." (*Id.* at 5–6); *see also* (*id.* at 11–12.)

After moving for and being granted substitute service, Plaintiff served Defendant on May 7, 2020. (ECF Nos. 7, 8.) On May 28, 2020, Defendant filed its Answer. (ECF No. 9.) On

---

[2] The Court notes that Plaintiff's appeal only explicitly addresses the May 3 Denial, but also states that it appeals "any other adverse benefit determinations" related to the Incident. (ECF No. 53-1:62.) Defendant construes Plaintiff's appeal as addressing both Benefit Denials. (ECF No. 53:10.) The Court does the same.

January 19, 2021, Defendant filed its first Motion for Summary Judgment.  (ECF No. 26.)  Plaintiff

responded to that motion, Defendant replied to Plaintiff's response, and then Plaintiff filed a sur-

reply.   (ECF Nos. 29, 31, 34.)   On May 3, 2021, the parties filed an Agreed Motion for

Continuance, which the Court granted.  (ECF Nos. 42, 43.)  On July 7, 2021, the Court issued an

amended scheduling order, which set a new dispositive motion deadline of February 18, 2022.

(ECF No. 48:2.)

On September 30, 2021, the Court denied Defendant's initial Motion for Summary

Judgment and *sua sponte* granted leave to file a second summary judgment motion "[d]ue to the .

. . scheduling changes in this case, the apparent likelihood of additional discovery, and the

limitations on filing Rule 56 motions."  (ECF No. 51:2.)  On November 9, 2021, Defendant filed

its Amended Motion for Summary Judgment.  (ECF No. 53.)  On December 8, 2021, Plaintiff

responded to the Motion, and on December 15, 2021, Defendant replied to Plaintiff's Response.

(ECF Nos. 59, 60.)  On March 7, 2022, Plaintiff supplemented her Response.  (ECF No. 68.)  Such

Motion, Response, Reply, and Supplemental Response are the subjects of this Report and

Recommendation.  *See* (ECF No. 64.)

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A fact is material "if proof of its existence might affect the outcome of the case."  *Roy v.*

*City of Monroe*, 950 F.3d 245, 254 (5th Cir. 2020).  "There exists a 'genuine dispute' about a

material fact . . . when the evidence would allow a reasonable jury to return a verdict for the

nonmovant."  *Id.*

A party seeking summary judgment bears the initial burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant carries that burden, the burden shifts to the nonmovant to show the existence of a genuine issue for trial. *Id.* at 323–25. The ultimate inquiry is whether the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

In ruling on a motion for summary judgment, "[c]ourts must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020). Courts, however, "refrain from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## III.   DISCUSSION

### A.  ERISA Section 510—Retaliation or Interference with Protected Rights

Plaintiff first alleges that Defendant violated ERISA Section 510. (ECF No. 1:2, 6–7.) Under ERISA Section 510, it is unlawful for an employer to retaliate against an employee for exercising a right under an ERISA plan or to interfere with the employee's receipt of benefits to which she would become entitled under the plan. 29 U.S.C. § 1140. To succeed on a Section 510 claim, the employee must first make a *prima facie* showing of a "(1) prohibited (adverse) employer action (2) taken for the purpose of interfering with the attainment of (3) any right to which the employee is entitled." *Bodine v. Employers Cas. Co.*, 352 F.3d 245, 250 (5th Cir. 2003).[3]  The

---

[3] Some courts distinguish a slightly different test for Section 510 retaliation claims. *See, e.g.*, *Jurach v. Safety Vision, LLC*, 72 F. Supp. 3d 698, 716 (S.D. Tex. 2014) (citing *Hamilton v. Starcom Mediavest Grp., Inc.*, 522 F.3d 623, 628 (6th Cir. 2008)) (listing the elements of a *prima facie* Section 510 retaliation claim as (1) plaintiff's engagement in an ERISA-protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse action), *aff'd on other grounds*, 642 F. App'x 313 (5th Cir. 2016). However, the majority approach in the Fifth Circuit is to apply the interference *prima facie* case to both interference and retaliation claims, and this Court

employee must also show that she is qualified for the position.  *See Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 261 (5th Cir. 2001).  Once the employee establishes a Section 510 *prima facia* case, the burden shifts to the employer to "articulate a non-discriminatory reason for its actions."  *Stafford v. True Temper Sports*, 123 F.3d 291, 295 (5th Cir. 1997) (per curiam).  If the employer can establish a nondiscriminatory explanation, then the burden shifts back to the employee to show that such explanation "is a pretext and the real purpose was denial of ERISA benefits."  *Id.*

First, looking at whether Plaintiff has established a *prima face* Section 510 case, the parties' arguments focus on whether Defendant committed an adverse action and if so, whether it did so with the purpose of retaliating against Plaintiff or interfering with her attainment of benefits.[4]

### 1.  Adverse Action

To commit a prohibited or adverse action under ERISA Section 510, an employer must "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary."  29 U.S.C. § 1140.  The record reflects that Defendant did not discharge, fine, suspend, or expel Plaintiff.  Additionally, Plaintiff does not argue that Defendant's action was disciplinary, but rather that it was discriminatory.  (ECF No. 1:6–7.)  Accordingly, the Court will focus on whether Defendant committed an adverse act by discrimination.

It is unclear to the Court what specific act gave rise to Plaintiff's Section 510 claim.  In her Complaint, Plaintiff broadly states that Defendant committed "unlawful interference, discrimination, and/or retaliation" without connecting those claims to particular facts.  (*Id.* at 2).

---

will do the same.  *See, e.g.*, *Parker v. Cooper Tire & Rubber Co.*, 546 F. App'x 522, 526 (5th Cir. 2014); *Stafford v. True Temper Sports*, 123 F.3d 291, 295 (5th Cir. 1997) (per curiam).

[4] Neither party argues about whether Plaintiff was entitled to the benefits she sought or whether she was qualified for the position, so the Court will not address those elements of the Section 510 *prima facie* case.

Defendant's Motion characterizes the adverse action as its issuance of the Benefit Denials and Appeal Decision.  (ECF No. 53:9–10.)  In her initial Response, Plaintiff similarly characterizes the denial of benefits as an adverse action.  (ECF No. 59:2, 10.)  However, she additionally argues that Defendant committed an adverse action when Zapata "filled out the [Injury Report Form] for Plaintiff, albeit inaccurately and incompletely," and "refused to add the injuries Plaintiff reported to him [to the Form] and demanded that Plaintiff sign the [Form]" without her requested revisions. (*Id.* at 5, 11.)[5]

In her Supplemental Response, Plaintiff further elaborates on the development of the Form as an adverse action.  (ECF No. 68:2–4.)  She relies on the deposition of Paul Dozier ("Dozier"), an "authorized representative of Caprock," as evidence for her arguments in her Supplemental Response.  (*Id.* at 1.)  However, Plaintiff does not attach any portions of the Dozier deposition to her Supplemental Response, but only cites to or quotes from the deposition.  Thus, the Court finds that the Dozier deposition is not properly authenticated, and the Court will not consider it as proper summary judgment evidence.  *See* Fed. R. Civ. P. 56(c); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("[U]nsubstantiated assertions are not competent summary judgment evidence.  The party opposing summary judgment is required to identify specific evidence *in the record* and to articulate the precise manner in which that evidence supports his or her claim."

---

[5] The Court notes it is unclear to what extent Zapata prevented Plaintiff from revising the Form or otherwise influenced her not to do so.  For example, in her deposition, Plaintiff stated that when she asked Zapata about adding to the list of injuries, "he said that it was unnecessary to do so," which is less forceful language than she implies.  (ECF No. 59-3:7); *see also* (*id.* at 9.)  Plaintiff also verified that she took the Form home after Zapata asked her to fill it out and return it.  (*Id.* at 7, 9.)  However, the Court notes other evidence provided by Plaintiff that supports her account.  *See* (*id.* at 8) (stating that Zapata "proceeded to throw the documents onto the desk and dismissed me" when she told him she needed to add injuries to the Form); (ECF No. 59-8:1) (providing an email in which Zapata states that he "told [Plaintiff] that [he] could not change the first [Form]").  For summary judgment purposes, the Court believes Plaintiff's allegation.  *See Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018).

(emphasis added) (citations omitted)); *Spears v. United States*, No. 5:13-CV-47-DAE, 2014 WL 3513203, at *4 (W.D. Tex. July 14, 2014) (collecting cases).

Considering the adverse action as a factual matter, the Court finds there is a genuine issue as to whether Zapata denied Plaintiff the opportunity to revise the Injury Report Form, and if so, to what extent that action was discriminatory and influential to the May 3 Denial and Appeal Decision. *See supra* note 6; (ECF No. 53-1:59–61, 72–75.)  However, the Court sees no factual dispute regarding the April 10 Denial, which only concerned Plaintiff's visits with Dr. Bean and did not implicate the Plan's Writing or Furnishing Requirements.  (ECF No. 53-1:55–58.) Defendant explains that it issued the April 10 Denial "because the provider was not authorized to provide treatment under the Plan."  (ECF No. 53:9.)  Plaintiff does not refute this.  Her Section 510 arguments only substantively concern the Injury Report Form, the May 3 Denial, and the Appeal Decision. *See* (ECF No. 59:9–14.)  Thus, to the extent that Plaintiff raises a Section 510 claim regarding the April 10 Decision, the Court finds that Defendant is entitled to summary judgment.  The Court continues the Section 510 analysis by considering, as the alleged adverse actions, Defendant's issuance of the unsigned and "inaccurate" Injury Report Form to Caprock and the subsequent May 3 Denial and Appeal Decision.  (*Id.* at 5–7, 11.)

As a legal matter, it is unclear to what extent any of the alleged actions here are considered adverse or prohibited for Section 510 purposes.  Defendant acknowledges that "one of the actions which Section 510 makes unlawful is the interference with a participant's ability to meet [ERISA plan] qualifications."  (ECF No. 53:9) (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142–43 (1990)); *see also Bodine*, 352 F.3d at 250 (requiring "unscrupulous conduct or intentional act (such as harassment or nefarious inducement to stay) on the part of the employer" for a Section 510 claim).  But the vast majority of ERISA Section 510 claims heard by Fifth Circuit courts

involve a termination of employment, which does not appear to be the circumstance in this case. *See, e.g.*, *Shah v. Chevron USA, Inc.*, 792 F. App'x 301, 302 (5th Cir. 2019) (per curiam); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 287 (5th Cir. 2004); *Unida v. Levi Strauss & Co.*, 986 F.2d 970, 973 (5th Cir. 1993).  Cases that involve an action other than termination appear to focus on the "intent" element rather than the "adverse act" element of the Section 510 claim.  *See, e.g.*, *Carter v. RMH Teleservices, Inc.*, No. Civ.A. SA04CA1130RF, 2005 WL 2086036, at \*2–3 (W.D. Tex. Aug. 10, 2005), *aff'd*, 205 F. App'x 214 (5th Cir. 2006); *Matassarin v. Lynch*, 174 F.3d 549, 569 (5th Cir. 1999); *McGann v. H & H Music Co.*, 946 F.2d 401, 404–08 (5th Cir. 1991).

Further, "[t]he Supreme Court has observed in dictum: 'ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits.'"  *McGann*, 946 F.2d at 406 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983)).  Some courts have said that "[S]ection 510 does not prohibit 'all employer actions undertaken with an eye toward thwarting the attainment of benefits; only changes in one's *employment status* cannot stem from benefit-based motivations.'"  *Carmouche v. MEMC Pasadena, Inc.*, No. 06-2074, 2008 WL 2838474, at \*12 (S.D. Tex. July 21, 2008) (quoting *Teumer v. Gen. Motors Corp.*, 34 F.3d 542, 545 (7th Cir. 1994)).  And some courts have held that the decision to terminate benefits is not an adverse action for Section 510 purposes but instead should be pled under ERISA Section 502.  *See, e.g.*, *Harris v. Metro. Life Ins. Co.*, No. 6:04-CV-372, 2006 WL 8440493, at \*7 (E.D. Tex. June 5, 2006); *Arensberg v. UNUM Life Ins. Co. of Am.*, No. 3:02-CV-0108-P, 2002 WL 32508209, at \*3–4 (N.D. Tex. Oct. 4, 2002).

Nonetheless, the Court finds that the current law does not definitively preclude a finding of a Section 510 adverse action here.  Based on Plaintiff's evidence of Zapata's refusal to revise the Form at Plaintiff's request and the centrality of the Form to the May 3 Denial and Appeal

Decision, a reasonable person could find that such circumstances constitute a discriminatory action. *See* (ECF Nos. 53-1:59–61, 72–75; 59:11; 59-3:9; 59-8:1.)  Where the application of the law in a case is unclear, summary judgment is not warranted.  *See Pena v. Bexar Cnty., Tex.*, 726 F. Supp. 2d 675, 688 (W.D. Tex. 2010); *Flores v. AT&T Corp.*, No. EP-17-CV-318-DB, 2019 WL 5785095, at *6 (W.D. Tex. Nov. 6, 2019); *see* Fed. R. Civ. P. 56(a).  Thus, the Court finds a genuine issue as to whether Defendant committed an adverse action for ERISA Section 510 purposes.  To evaluate the remaining elements of the Section 510 claim, the Court will assume an adverse action occurred.

### 2.   Intent to Interfere or Retaliate

The remaining ERISA Section 510 element at issue is intent to interfere or retaliate.  The employee must provide evidence that the employer acted with the "specific intent" to retaliate or interfere with the employee's benefits.  *Hinojosa v. Jostens Inc.*, 128 F. App'x 364, 368–69 (5th Cir. 2005).  Specific intent can be proven by direct or circumstantial evidence.  *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999).  The employee "need not show that the sole reason for the [adverse action] was to interfere with rights protected by ERISA; he need only prove that a specific intent to violate ERISA partly motivated the employer." *Id.*  But if the only evidence of such specific intent "is the employee's lost opportunity to accrue additional benefits, the employee has not put forth evidence sufficient to separate that intent from the myriad of other possible reasons for which an employer might have discharged him."  *Clark v. Resistoflex Co., A Div. of Unidynamics Corp.*, 854 F.2d 762, 771 (5th Cir. 1988).

Defendant posits that Plaintiff has failed to show that Defendant intended to interfere with her ERISA rights or to retaliate against her for attempting to exercise those rights.  (ECF No. 53:9) ("Rather, Cervantes alleges that 3NT's denial of her request for benefits was a retaliatory measure

in and of itself."). Plaintiff responds with evidence allegedly showing that Defendant's development of the Injury Report Form and subsequent May 3 Denial and Appeal Decision were motivated "at least in part" by its interference with her receipt of those benefits. (ECF No. 59:2.) Primarily, Plaintiff notes that Jasso, 3NT's owner, "admitted that Plaintiff's prior work-related injury [from an unrelated incident in 2014] . . . had caused Defendant's insurance to drop Defendant's coverage because of the extent of Plaintiff's medical expenses" and that Defendant "did not want to be dropped by an insurance company again." (*Id.* at 13); *see* (ECF No. 59-14:4.)[6] Plaintiff claims that these statements reflect Defendant's intent "to prevent excessive medical expenses and prevent a possibility of being dropped by another insurance company" when it denied Plaintiff coverage for her injuries resulting from the 2019 Incident. (ECF No. 59:13.)[7]

The Court finds that Plaintiff has raised sufficient circumstantial evidence, beyond simply her lost opportunity to accrue benefits, to meet the intent element of a *prima facie* Section 510 case. *See Nero*, 167 F.3d at 927; *Clark*, 854 F.2d at 771. With Jasso's statements and the events surrounding the Injury Report Form, there is a genuine issue as to whether Defendant had the specific intent to interfere with Plaintiff's benefits under the Plan. Thus, the Court finds that Plaintiff has succeeded in establishing a *prima facie* Section 510 case regarding the Injury Report Form, May 3 Denial, and Appeal Decision, and the burden shifts to Defendant to present a nondiscriminatory reason for its actions.

---

[6] It is questionable to what extent Jasso's statements motivated the instant issues with the Form, May 3 Denial, and Appeal Decision, considering Jasso's other statements that seem to negate his involvement in the process and any intent to interfere or retaliate. (ECF Nos. 53-1:80; 59-14:4, 6.) Nonetheless, the Court construes factual disputes in Plaintiff's favor. *Cadena*, 946 F.3d at 723.

[7] Plaintiff also argues that the temporal proximity between her benefit claims and Defendant's adverse actions shows discriminatory intent. *See* (ECF No. 59:10, 12) (citing *Montes v. Phelps Dodge Indus., Inc.*, 481 F. Supp. 2d 700, 712 (W.D. Tex. 2006)). However, the Court deems this argument irrelevant given the nature of the alleged adverse actions here. *See Montes*, 481 F. Supp. 2d at 713–14 (concerning the temporal proximity between a benefit claim and the termination of employment, which is not the case here).

### 3.   Defendant's Nondiscriminatory Reasons and Plaintiff's Claims of Pretext

As nondiscriminatory reasons for issuing the May 3 Denial and Appeal Decision, Defendant presents the ways in which those decisions square with the Plan.  Defendant issued the May 3 Denial "because the sole 'writing' Cervantes provided failed to satisfy" the Plan's Writing Requirement.  (ECF No. 53:9–10); *see* (ECF No. 53-1:37.)  Additionally, even though Plaintiff's text messages allegedly failed to meet the Plan's Writing Requirement, Defendant says that she "was given the opportunity to become eligible for Plan benefits if she completed and signed the [Injury Report Form]."  (*Id.* at 6); *see* (ECF No. 53-1:89–92, 101.)  Contrary to Plaintiff's contention, Defendant says it gave Plaintiff multiple opportunities to fill out the Form, and her failure to do so influenced Defendant's May 3 Denial and Appeal Decision.  *See* (ECF Nos. 53:6; 53-1:89–92, 101.)

The Court finds that, on its face, Defendant's explanations that Plaintiff failed to meet the Plan's Writing and Furnishing Requirements are nondiscriminatory reasons for its actions.  *See Stafford*, 123 F.3d at 293–96.  Thus, the burden shifts back to Plaintiff to show those reasons to be pretextual.

Plaintiff disputes the facts underlying Defendant's nondiscriminatory explanations, specifically highlighting Zapata's development of the Form and Jasso's statements about Plaintiff's prior injury.  *See* (ECF Nos. 59:11; 59-3:8; 59-8:1; 59-14:4.)  The Court finds that a reasonable person could conclude that Zapata's actions and Jasso's statements "call into question the veracity of Defendant's legitimate, non-discriminatory reason[s]."  *Crain v. Schlumberger Tech. Co.*, 187 F. Supp. 3d 732, 742 (E.D. La. 2016); *see also Geter v. McDonald's Corp.*, No. 399CV-2009-R, 2000 WL 1911656, at *6–7 (N.D. Tex. Dec. 21, 2000) (denying summary judgment when "reasonable minds could differ as to the import of the evidence" regarding Section

510 pretext (quoting *Anderson*, 477 U.S. at 250)).[8]  Thus, viewing the evidence most favorably for

Plaintiff as the nonmovant, the Court finds that Plaintiff raises a genuine issue as to whether

Defendant's explanations are pretextual.  *Cadena*, 946 F.3d at 723.  Therefore, the Court finds that

Defendant is not entitled to summary judgment on Plaintiff's ERISA Section 510 claim with

respect to the Injury Report Form, May 3 Denial, and Appeal Decision.  On Plaintiff's ERISA

Section 510 claim, the Court recommends granting Defendant's Motion as to the April 10 Denial

and denying the Motion in all other respects.

## B.  ERISA Section 502(a)(1)(B)—Denial of Claim for Benefits

Next, Plaintiff alleges that Defendant violated ERISA Section 502(a)(1)(B) by wrongfully

denying her benefits under the Plan.  (ECF No. 1:7–8.)  ERISA Section 502(a)(1)(B) creates a civil

cause of action for a participant "to recover benefits due to him under the terms of his plan, to

enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the

terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  Courts review an ERISA plan administrator's

benefits determination *de novo* unless the plan "gives the administrator or fiduciary discretionary

authority to determine eligibility for benefits or to construe the terms of the plan," in which case

courts review for abuse of discretion.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115

(1989).  Under either standard, "eligibility for benefits under an ERISA plan is governed first and

foremost by the plain meaning of the plan language."  *Montes v. Phelps Dodge Indus., Inc.*, 481

F. Supp. 2d 700, 715 (W.D. Tex. 2006).

---

[8] Regarding the May 3 Denial, Plaintiff also contends that Defendant's explanations are "pretext" because Defendant provides "inconsistent reasons" for denying benefits by now proffering a new explanation for the denial that was not raised before this litigation—that Plaintiff's writing "lacked any information on 'accidental injuries.'"  (ECF No. 59:13.)  Based on the record, the Court does not agree with Plaintiff's contention that Defendant has provided inconsistent reasons.  *See* (ECF No. 53-1:59–61, 72–75.)

The parties agree that the Court should apply the abuse of discretion standard because the Plan grants the Plan Administrator discretion to grant or deny coverage claims.  *See* (ECF Nos. 53:2; 59:14.)  For abuse of discretion review, the Fifth Circuit evaluates an administrator's denial of benefits under a two-part test.  At step one, the court determines whether the administrator gave a "legally correct" interpretation of the plan.  *Gosselink v. Am. Tel. & Tel., Inc.*, 272 F.3d 722, 726 (5th Cir. 2001).  If the court deems the administrator's interpretation of the plan to be legally correct, then the court must uphold the denial of benefits.  *Aboul-Fetouh v. Emp. Benefits Comm.*, 245 F.3d 465, 472 (5th Cir. 2001).  If the court deems it legally incorrect, then it must move on to step two.  *Id.*  At step two, the court must decide whether the administrator abused its discretion when it denied benefits.  *Id.*

### 1.  Legal Correctness of Plan Interpretation

To determine whether an ERISA plan interpretation is legally correct, courts consider "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan."  *Gosselink*, 272 F.3d at 726.

Defendant does not apply the Fifth Circuit two-part test in its argument for summary judgment under Section 502(a)(1)(B).  However, Defendant argues that the May 3 Denial[9] was made pursuant to the Plan's express terms and a "reasonable interpretation" of those terms.  (ECF No. 53:12.)  Specifically, Defendant explains that it issued the May 3 Denial because Plaintiff's text messages do not describe any Accidental Injuries, thus failing to satisfy the Plan's Writing Requirement, and because Plaintiff failed to satisfy the Plan's Furnishing Requirement, presumably when she refused to sign the Injury Report Form.  (*Id.* at 12–13.)  For these reasons,

---

[9] The Court notes that both parties only address the May 3 Denial with respect to the Section 502(a)(1)(B) claim, so the Court excludes the April 10 Denial from its analysis.

"the Plan requires the administrator to deny any claim for benefits," and so Defendant asserts that its May 3 Denial was justified. (*Id.* at 13.)

Under step one analysis, asking whether Defendant's interpretation of the Plan was legally correct, Plaintiff only discusses the "fair reading" factor. (ECF No. 59:15.) She posits that Defendant's interpretation of the Plan diverges from a fair reading of the Plan because, based on the definitions of "furnish" and "information," it would be unreasonable "to interpret the phrase 'furnish all information requested' as meaning 'signing and adopting statements that are inaccurate or incomplete,'" in reference to the Injury Report Form. (*Id.*) She further argues that a reasonable interpretation of both the Writing and Furnishing Requirements does not indicate that Plaintiff must provide information in a specific format such as the Form, versus another format such as verbally or by text message. *See* (*id.* at 16.)

The Court finds that Defendant's interpretation of its Plan is not legally correct for ERISA Section 502(a)(1)(B) purposes. Based on the "ordinary and generally accepted meaning" and context of the Plan's language, Defendant has not shown that any or all of the text messages, particularly the text from Plaintiff's spouse about the "medical checkup," could not meet the Plan's Writing Requirement. *Koehler v. Aetna Health Inc.*, 683 F.3d 182, 187 (5th Cir. 2012); *see Langley v. Howard Hughes Mgmt. Co., L.L.C., Separation Benefits Plan*, 694 F. App'x 227, 232–33 (5th Cir. 2017) (per curiam); (ECF Nos. 53-1:37; 59-4:1). Specifically, the Plan does not clearly state that the writing must explicitly identify the Accidental Injury versus simply implying that the injury does or might exist, especially since the definition of Accidental Injury requires medical treatment that could be "initiated within 30 days of the injury producing event." (ECF No. 53-1:22); *see* (*id.* at 37.) Additionally, the Plan does not specify in what way or form the Participant must meet the Furnishing Requirement, and Plaintiff has provided evidence that she furnished the

requested information by means other than the Injury Report Form, such as verbally.  (*Id.* at 36); (ECF Nos. 59-6:6; 59-8; 59-9; 59-13.)  Therefore, the Court finds that a plain and reasonable reading of the Plan could include the text messages as a sufficient "writing" and Plaintiff's communications outside of the Form as a sufficient "furnishing" of information.  Defendant has not identified anything within the plain meaning of the Plan to the contrary.  Thus, the Court finds Defendant's interpretation of the Plan language to be legally incorrect.

### 2.  Abuse of Discretion

Next, the Court moves to step two of the abuse of discretion analysis.  The administrator abuses its discretion if its decision to deny benefits is arbitrary or is not supported by substantial evidence.  *Encompass Off. Sols., Inc. v. La. Health Serv. & Indem. Co.*, 919 F.3d 266, 274 (5th Cir. 2019).  "A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and evidence."  *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246–47 (5th Cir. 2009) (quoting *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999)).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rittinger v. Healthy All. Life Ins. Co.*, 914 F.3d 952, 957 (5th Cir. 2019) (per curiam) (citing *Corry v. Liberty Life Assurance Co. of Bos.*, 499 F.3d 389, 398 (5th Cir. 2007)).

The court should consider three factors in making the step two assessment: "(1) the internal consistency of the plan under the administrator's interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith."  *Youboty v. NFL Player Disability*, 856 F. App'x 497, 500 (5th Cir. 2021) (per curiam) (quoting *Wildbur v. ARCO Chem. Co.*, 974 F.2d

631, 637 (5th Cir. 1992)). "[I]f an administrator interprets an ERISA plan in a manner that directly contradicts the plain meaning of the plan language, the administrator has abused his discretion even if there is neither evidence of bad faith nor of a violation of any relevant administrative regulations." *Gosselink*, 272 F.3d at 727. Additionally, if the plan administrator had a conflict of interest when it denied benefits, then the court gives less deference to the administrator's decision. *Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1027–28 (5th Cir. 2015). The plaintiff bears the burden of proof for both abuse of discretion and conflict of interest. *See White v. Life Ins. Co. of N. Am.*, 892 F.3d 762, 770 (5th Cir. 2018).

First considering the conflict-of-interest issue, the Court notes that Defendant argues it "acted consistent with how a fiduciary acting free of any conflict would have acted." (ECF No. 53:12.) Plaintiff argues that Defendant's decision deserves less deference because Defendant was both paying for and reviewing claims under its Plan, presenting a "structural conflict of interest." (ECF No. 59:16–17) (citing *Porter v. Lowe's Cos., Inc.'s Bus. Travel Accident Ins. Plan*, 731 F.3d 360, 364 (5th Cir. 2013); *Langley*, 694 F. App'x at 233).

Defendant acknowledges that it acted as its own Plan Administrator, through Zapata as its representative, and also appointed Caprock as the Plan's Claim Administrator for reviewing benefit claims. *See* (ECF Nos. 53:4; 53-1:21, 38, 73, 80; 59-6:2–4, 10, 14; 59-14:2–4, 6, 8.) Considering the evidence of Zapata's role in developing the Injury Report Form and the importance of that Form to the May 3 Denial, the Court finds that Plaintiff has raised a factual question about whether there is a conflict of interest. *See* (ECF Nos. 53-1:59–61, 72–75; 59:11; 59-3:9; 59-8:1.) Defendant does not sufficiently demonstrate the separation between Defendant's and Caprock's roles in making or influencing benefits determinations. With deference to

Plaintiff's factual allegations as the nonmovant, the Court will thus limit its deference to Defendant's decision. *See Hagen*, 808 F.3d at 1027–28.

Plaintiff argues that Defendant abused its discretion by contradicting the plain meaning of the Plan language when it determined that her text messages did not meet the Writing Requirement. (ECF No. 59:17–18.)  Additionally, for the "factual background" factor of step two, Plaintiff argues that Defendant abused its discretion because "[g]iven the circumstances of the accident that were communicated by Plaintiff to Defendant, there is no reasonable basis for claiming that Defendant was not aware that Plaintiff sustained on-the-job injuries." (*Id.* at 17.)  Defendant argues that while Plaintiff "relies on deposition statements that relate that Jasso may have known about an injury that Cervantes experienced, it does not fit into the definition of Accidental Injury." (ECF No. 60:3.)  Defendant reiterates that Plaintiff's text messages lacked information regarding Accidental Injuries and thus did not meet the Writing Requirement. (*Id.*)

The Court finds a genuine issue as to whether Defendant abused its discretion in issuing the May 3 Denial.  As stated before, a reasonable juror could find that the text messages satisfy the Writing Requirement.  Thus, the Court questions whether Defendant's May 3 Denial was supported by substantial evidence because a reasonable mind might not accept such evidence as adequate to support the denial. *See Rittinger*, 914 F.3d at 957–58.  Therefore, the Court recommends denying Defendant's Motion as to Plaintiff's Section 502(a)(1)(B) claim.

## C.  ERISA Sections 502(a)(3) and 409(a)—Breach of Fiduciary Duty

Plaintiff further claims that Defendant breached its fiduciary duties under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), and ERISA Section 409(a), 29 U.S.C. § 1109(a), by denying her benefits "without a reasonable basis for such refusal, in violation of 29 [U.S.C.] § 1104(a)." (ECF No. 1:8.)  When an ERISA plan administrator breaches its fiduciary duty, equitable relief

may be appropriate under ERISA § 502(a)(3).  *See Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 451 (5th Cir. 2013).  Equitable relief includes monetary compensation in the form of a surcharge. *Id.* at 451–52 (citing *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011)).

Remedies under Section 502(a)(3) are available when there is not "elsewhere provided adequate relief for a beneficiary's injury."  *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996).  If a claimant's injury gives rise to a cause of action under ERISA Section 502(a)(1)(B), the claimant may not bring a claim under ERISA Section 502(a)(3).  *Manuel v. Turner Indus. Grp., L.L.C.*, 905 F.3d 859, 865 (5th Cir. 2018).

Defendant argues that "Cervantes has failed to establish that her claims against 3NT would not be fully redressed under ERISA Section 502(a)(1)(B)."  (ECF No. 53:14.)  Specifically, Defendant contends that Plaintiff's Section 502(a)(1)(B) and Section 502(a)(3) claims are based on the same "act," that is, "3NT's denial to pay for medical expenses."  (*Id.*)  "Furthermore, Cervantes has failed to establish the existence of any fact that suggests the Plan Administrator breached its fiduciary duty owed to the [P]lan under Section 409 or that the Plan suffered any damage as a result of the breach."  (*Id.*)

Plaintiff responds that her claims are "not duplicative" because "the nature of the underlying injuries" differs.  (ECF No. 59:18.)  Specifically, she claims to base her Section 502(a)(1)(B) claim on "Defendant's improper denial of her request for benefits," while basing her Section 502(a)(3) claim on Defendant's "implicitly representing that she could attain her ERISA-protected benefits if she continued treatment with a pre-approved provider—only to subsequently terminate her eligibility based on arbitrary justifications."  (*Id.*)  Defendant replies by reiterating that "Cervantes has failed to allege that Defendant committed any other action outside its

evaluation of her qualifications to receive benefits under the terms of the Plan, or that the remedy provided under Section 502(a)(1)(B) would not fully redress her claims."  (ECF No. 60:3–4.)

In arguing for her breach of fiduciary duty claims, Plaintiff does not dispute the content or reasoning of the April 10 Denial, but rather argues that it led her to believe she would receive future coverage under the Plan.  (ECF No. 59:18.)  Thus, the injury at issue is the May 3 Denial, which is the basis of Plaintiff's Section 502(a)(1)(B) claim.  *See supra* note 9.  Focusing "on the substance of the relief sought and the allegations pleaded, not on the label used," the Court finds that Defendant is entitled to summary judgment on Plaintiff's Section 502(a)(3) claim because Plaintiff may instead, and indeed does, seek relief for the same injury under Section 502(a)(1)(B). *Gearlds*, 709 F.3d at 452; *Manuel*, 905 F.3d at 863–67.

Separately, ERISA Section 409 holds plan fiduciaries "personally liable to make good to such plan any losses to the plan" and any profits gained from plan assets as a result of a breach of fiduciary duty.  29 U.S.C. § 1109(a).  The extent of Plaintiff's Section 409 argument is contained in her Complaint, which merely recites the cause of action without connecting facts to the claim. *See* (ECF No. 1:8.)  Thus, Plaintiff fails to refute Defendant's claim that there is no genuine issue of material fact regarding her Section 409 claim.  *See* (ECF No. 53:14); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (noting that the nonmovant may not satisfy its summary judgment burden with "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence."  (internal citations omitted)).[10]

---

[10]  Plaintiff cites *Fracalossi v. MoneyGram Pension Plan*, No. 3:17-CV-00336-X, 2019 WL 5578561 (N.D. Tex. Oct. 29, 2019) to claim that "the Fifth Circuit recognizes [ERISA] § 502(a)(3) claims for the loss or denial of ERISA-protected benefits."  (ECF No. 59:18.)  However, the plaintiff in that case did not have a cause of action under ERISA Section 502(a)(1)(B), so it poses different eligibility concerns than the case here.  *See Fracalossi v. MoneyGram Pension Plan*, No. 3:17-CV-00336-X, 2021 WL 5505604, at *3–4 (N.D. Tex. Nov. 24, 2021).

Thus, the Court finds that Defendant is entitled to summary judgment on both of Plaintiff's breach of fiduciary duty claims.  Therefore, the Court recommends granting Defendant's Motion as to Plaintiff's ERISA Section 502(a)(3) and Section 409(a) claims.

## D.  ERISA-Estoppel

Plaintiff also alleges that Defendant is "estopped from denying Plaintiff's claim for benefits under the Plan, in order to prevent Defendant 3NT from benefitting from its own discriminatory and retaliatory conduct."  (ECF No. 1:8.)  To establish an ERISA-estoppel claim, a plaintiff must show: "(1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances."  *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444–45 (5th Cir. 2005).  A "misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision."  *Id.* at 445 (quoting *Fischer v. Phila. Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993)).  "[A] party's reliance is not reasonable if it is inconsistent with the clear and unambiguous terms of the plan documents."  *Cell Sci. Sys. Corp. v. La. Health Serv.*, 804 F. App'x 260, 265–66 (5th Cir. 2020) (per curiam).  The Fifth Circuit recognizes extraordinary circumstances to "involve bad faith, fraud, or concealment, as well as possibly when 'a plaintiff repeatedly and diligently inquired about benefits and was repeatedly misled' or when 'misrepresentations were made to an especially vulnerable plaintiff.'"  *Id.* at 266 (quoting *High v. E-Sys. Inc.*, 459 F.3d 573, 580 (5th Cir. 2006)).

Defendant argues that Plaintiff fails to establish a material misrepresentation for an ERISA-estoppel claim.  (ECF No. 53:15.)  Specifically, it argues that the only acts underlying Plaintiff's ERISA-estoppel claim are Defendant's Benefit Denials, acts "taken pursuant to the clear and unambiguous terms of the Plan" since "the terms of the Plan unambiguously limit benefit coverage to Accidental Injuries reported in writing within 24 hours after the end of a Participant's shift."

(*Id.*); *see also* (ECF No. 60:4.)  Defendant also claims that Plaintiff knew that she needed to furnish the information requested in the Form in advance of the benefit determination.  (ECF No. 53:15–16) (citing (ECF No. 53-1:72–75)).

In response, Plaintiff only cites to the Benefit Denials as evidence of material misrepresentation.[11]  Specifically, she argues that "Defendant misrepresented the basis for the initial [April 10] denial of Plaintiff's request for benefits; by extension, Defendant implicitly represented to Plaintiff that she would be eligible for said benefits if she continued treatment with a pre-approved provider."  (ECF No. 59:20.)  Plaintiff does not otherwise refute Defendant's claim that she fails to establish a material misrepresentation.

The Court sees no material misrepresentation here.  The Plan provides that "acceptance of medical treatment by a Participant shall not obligate the Company to pay any or all related medical expenses if it is . . . excluded or not covered by this Plan."  (ECF No. 53-1:33.)  Thus, it is not substantially likely that Defendant's April 10 Denial would mislead a reasonable employee to "continue[] treatment with a pre-approved provider" under the belief that the Plan would cover that treatment.  (ECF No. 59:20); *see Mello*, 431 F.3d at 445.  Thus, the Court finds that Plaintiff has not satisfied the material misrepresentation element, and so her ERISA-estoppel claim fails.  *Mello*, 431 F.3d at 444–45.  Therefore, the Court recommends granting Defendant's Motion as to Plaintiff's ERISA-estoppel claim.

---

[11]  In her Supplemental Response, Plaintiff provides additional arguments about Defendant's material misrepresentations.  *See* (ECF No. 68:6–7.)  However, she only supports those arguments with reference to the Dozier deposition.  *See* (*id.*)  As discussed in Section III.A.1. above, the Court declines to consider the Dozier deposition because Plaintiff did not attach it to her Supplemental Response, and thus, it is not adequately authenticated or introduced "in the record."  Fed. R. Civ. P. 56(c); *Ragas*, 136 F.3d at 458; *Spears*, 2014 WL 3513203, at *4.

## IV.    CONCLUSION

For all the reasons set forth above, the Court **RECOMMENDS** that Defendant's Amended Motion for Summary Judgment be **GRANTED IN PART** and **DENIED IN PART**, specifically as follows:

- As to Plaintiff's ERISA Section 510 claim, **GRANTED** for the April 10 Denial and **DENIED** in all other respects;

- **DENIED** as to Plaintiff's ERISA Section 502(a)(1)(B) claim;

- **GRANTED** as to Plaintiff's ERISA Section 502(a)(3) and Section 409(a) claims; and

- **GRANTED** as to Plaintiff's ERISA-estoppel claim.

    **SIGNED** this 2nd day of May, 2022.

**ROBERT F. CASTAÑEDA**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**