UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **BRENDA ISABEL CERVANTES**, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | |
| | § | **EP-19-CV-00383-DCG** |
| **3NT, LLC**, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Brenda Isabel Cervantes has asserted ERISA claims against Defendant 3NT,

LLC under four different legal theories.  3NT moves for summary judgment on all of

Cervantes's claims.  Am. Mot. Summ. J., ECF No. 53 ("Motion").  This Court referred the

Motion to the Magistrate Judge, who issued a Report and Recommendations granting in part and

denying in part 3NT's Motion.  R. & R., ECF No. 72.  Both parties have objected to the Report

and Recommendations.  Def.'s Objs., ECF No. 74; Pl.'s Objs., ECF No. 75.  For reasons

explained below, the Court accepts the Report and Recommendations.

## I.   BACKGROUND[1]

Cervantes worked for 3NT as a truck driver.  On March 9, 2019, she was involved in a

rollover truck accident while working in the scope of her employment.[2]  That day, Cervantes

informed her supervisor, Cesar Zapata, and the owner of 3NT, Ruben Jasso, of the accident.[3]

Cervantes sought medical care within 24 hours of the accident.[4]  Ten days after the accident, on

---

[1] Because this case is in summary judgment posture, the facts are construed and presented in the light most favorable to Cervantes.  *E.g.*, *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).

[2] Pl.'s Resp. to Mot. ("Response") at 4; Mot. at 1; Affidavit of Cervantes, Resp. Ex. A ¶ 3.

[3] Resp. Ex. A ¶ 3; Resp. Ex. D (screenshots of text messages); Cervantes Depo., Resp. Ex. C at 17:4-17; Jasso Depo., Resp. Ex. N at 6:4-16.

[4] Resp. Ex. D; Resp. Ex. E; *see* Zapata Depo., Resp. Ex. F at 23:10-24.

- 1 -

March 20, 2019, Cervantes met with Zapata to discuss her benefit eligibility for work-related accidents.[5]

3NT offers its employees an insurance policy, covered by the Employee Retirement Income Security Act ("ERISA"),[6] called the Work Injury Benefit Plan (the "Plan").[7]  3NT serves as its own Plan Administrator, Mot. at 2, but it hired Caprock Claims Management to serve as the Claim Administrator for purposes of making benefit determinations.[8]  So while Zapata served as 3NT's day-to-day plan administrator,[9] it's Caprock that ultimately reviewed Cervantes's claim for benefits, not 3NT.

Broadly speaking, the Plan covers participants "for Medical Expense Benefits for Covered Expenses that result directly . . . from Injury that results from an Accidental Injury."[10]  The Plan defines "Accidental Injury," in part, as an injury that "occurred in Scope of Employment" and "for which medical treatment was initiated within 30 days of the injury producing event."[11]  The Plan sets forth certain prerequisites that a Plan participant must meet to recover benefits.  Relevant here, the Plan requires participants to "*immediately* report in writing any Accidental Injury."[12]  Participants "must report every Accidental Injury . . . regardless of the nature or severity."[13]

During the March 20, 2019 meeting with Zapata, Cervantes avers that Zapata handed her an Employee Injury Report form ("Injury Report").[14]  She asserts that Zapata or someone else at

---

[5] Resp. Ex. A ¶ 4.
[6] 3NT is a non-subscriber to the Texas Workers' Compensation System.  Mot. at 3–4.
[7] Mot. Ex. C; Resp. Ex. B.
[8] *E.g.*, Pl.'s Corrected Supp. Resp., ECF No. 73-1, Ex. P at 6:7-18, 8:10–9:13.
[9] Resp. Ex. F. at 12:3–9 and 9:19-23.
[10] Resp. Ex. B art. 2.4.
[11] *Id.* art. 1, p.5.
[12] *Id.* art. 3.1.
[13] *Id.*
[14] Resp. Ex. A ¶ 4.

3NT already completed that form on her behalf.[15]  The Injury Report described only Cervantes's

knee fracture,[16] which Cervantes contends was (and is) an incomplete and inaccurate

representation of all the injuries she sustained during the truck accident.[17]  Cervantes asserts that

she asked Zapata if she could change the Injury Report so that it would be complete and

accurate.[18]  Because Cervantes viewed the Injury Report and incomplete and inaccurate, and

because Zapata told her that she could not make changes to it, she refused to sign it.[19]

Meanwhile, 3NT contends that it offered Cervantes the opportunity to complete the Injury

Report.[20]  3NT admits in its Motion that Cervantes would have been eligible for benefits under

the Plan had she signed the Injury Report.[21]

Despite the issues with the Injury Report, Cervantes sought medical benefits—that is,

coverage under the Plan—for medical treatment she received for her alleged injuries.  3NT's

Claim Administrator denied her requests for coverage on two separate occasions and on two

separate grounds.  First, on April 10, 2019, the Claim Administrator denied Cervantes coverage

for medical treatment she sought from a doctor named James Bean because he was "not [an]

authorized Provider[] as defined by the Plan."[22]  (The Court refers to this benefit determination

as the "April 10 Denial.")  Second, on May 3, 2019, the Claim Administrator denied Cervantes

coverage for *any* medical care related to the truck accident because, the Claim Administrator

said, she "refused" to properly "report[] [her] injury."[23]  (The Court refers to this benefit

---

[15] *Id.*
[16] Resp. Ex. G.
[17] Resp. Ex. A ¶ 4.
[18] *Id.*; Cervantes Depo., Mot. Ex. I at 20:14–21:5.
[19] Resp. Ex. A ¶ 4; Resp. Ex. G.
[20] Mot. at 6.  *But see* Resp. Ex. F 33:8–39:23 (Zapata unable to recall what he said to Cervantes).
[21] Mot. at 6.
[22] Resp. Ex. J.
[23] Resp. Ex. K.

determination as the "May 3 Denial.")  Cervantes appealed the May 3 Denial and the Appeals

Committee upheld the denial on similar grounds as the Claim Administrator.[24]

Having run out of options for administrative redress, Cervantes filed her Complaint (ECF

No. 1) on December 30, 2019.  She alleges that 3NT:

(1) interfered with the exercise of her rights under the Plan, in violation of ERISA § 510, 29
    U.S.C. § 1140;

(2) wrongfully denied benefits under the Plan in violation of ERISA § 502(a)(1)(B), 29
    U.S.C. § 1132(a)(1)(B);

(3) breached its fiduciary duty under ERISA § 502(a)(3) and 409(a), 29 U.S.C. §§
    1132(a)(3) and 1109(a); and

(4) is estopped from denying her claim for benefits under the federal common law doctrine
    of ERISA estoppel.

Compl. ¶¶ 32–50.

3NT moves for summary judgment on all of Cervantes's claims.  The Court referred

3NT's Motion to United States Magistrate Judge Robert F. Castañeda for a report and

recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 1(d) of Appendix C to the Local

Rules of this District Court.[25]  ECF No. 64.  Judge Castañeda issued his "Report and

Recommendations" (ECF No. 72) on May 2, 2022.  He recommends that 3NT's Motion be

granted in part and denied in part.  Specifically, Judge Castañeda recommends that 3NT's

Motion be:

1. GRANTED as to Cervantes's ERISA § 510 claim for the April 10 Denial and
   DENIED in all other respects;

2. DENIED as to Cervantes's ERISA § 502(a)(1)(B) claim;

---

[24] Resp. Ex. O.
[25] On January 19, 2021, 3NT filed a motion for summary judgment, ECF No. 26, which the Court later
denied without prejudice to refiling, ECF No. 51.  3NT later filed an "Amended Motion for Summary Judgment"
(ECF No. 53)—the motion currently under consideration.

3.   GRANTED as to Cervantes's ERISA §§ 502(a)(3) and 409(a) claims; and

4.   GRANTED as to Cervantes's ERISA estoppel claim.

ECF No. 72 at 26.

Both Cervantes and 3NT filed objections to the Magistrate Judge's Report and Recommendations.  3NT objects to the recommendation that its Motion be denied with respect to Cervantes's ERISA § 510 claim (except for as it applies to the April 10 Denial) and to the recommendation that its Motion be denied with respect to Cervantes's ERISA § 502(a)(1)(B) claim.  ECF No. 74.  Cervantes objects to the recommendation that the Court grant summary judgment on her ERISA estoppel claim.  ECF No. 75.  No party objected to the recommendation that the Court grant summary judgment as to Cervantes's ERISA §§ 502(a)(3) and 409(a) claims.

## II.    DISCUSSION

### A.  Standard for Reviewing Report and Recommendation

When a party timely files written objections to a magistrate judge's report and recommendation, the district judge must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see also* FED. R. CIV. P. 72(b)(3); *United States v. Raddatz*, 447 U.S. 667, 676 (1980) ("[I]n providing for a '*de novo* determination,' rather than *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations.").  After completing his or her review of the report, the district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1); *see also* FED. R. CIV. P. 72(b)(3).

As to other portions—that is, the unobjected-to portions—of the magistrate judge's report and recommendation, the district judge reviews the report and recommendation for clear error,

an abuse of discretion, or conclusions that are contrary to law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989). "A factual finding is clearly erroneous when, based on the evidence as a whole, [the court is] left with the definite and firm conviction that a mistake has been made." *Realogy Holdings Corp. v. Jongebloed*, 957 F.3d 523, 530 (5th Cir. 2020) (quotations omitted).

## B. Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations omitted); *Roy v. City of Monroe*, 950 F.3d 245, 254 (5th Cir. 2020). And a dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357–58 (5th Cir. 2017).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (cleaned up). "Once the moving party has demonstrated the absence of a material fact issue, the non-moving party must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *McCarty*, 864 F.3d at 357 (cleaned up). The burden of showing "specific facts" that establish a "genuine issue concerning every essential component of the case" cannot be met "by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Id.* (cleaned up).

In ruling on a motion for summary judgment, "courts must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).  Courts, however, "refrain from making credibility determinations or weighing the evidence."  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (internal quotations omitted).  That is, courts refrain from "determin[ing] the truth of the matter."  *Anderson*, 477 U.S. at 249.  Instead, "the evidence of the nonmovant is to be believed."  *Davenport v. Edward D. Jones & Co., L.P.*, 891 F.3d 162, 167 (5th Cir. 2018) (cleaned up).  Nevertheless, the court "need not credit evidence that is 'merely colorable' or not significantly probative."  *Id.* (quoting *Anderson*, 477 U.S. at 249–50).

## C.  Preliminary Matter: Plaintiff's Motion for Leave to File Supplemental Response

After the Magistrate Judge issued his Report and Recommendations, Cervantes filed a "Motion for Leave to File Corrected Supplemental Response in Opposition to Defendant 3NT, LLC's Amended Motion for Summary Judgment" (ECF No. 73).  Cervantes does not change her arguments from her previous Supplemental Response (ECF No. 68); instead she adds as an exhibit: the deposition of Paul Dozier that she inadvertently omitted from her previous filing. ECF No. 73.  Cervantes indicates in her motion for leave to file that 3NT opposes her motion, but 3NT did not file a response in opposition.

District courts have discretion to accept new evidence for its review of a report and recommendation.  28 U.S.C. § 636(b)(1) (district judge "may also receive further evidence"); *Davis v. Fernandez*, 798 F.3d 290, 292 (5th Cir. 2015).  This Court will exercise that discretion and GRANT Cervantes's "Motion for Leave to File Corrected Supplemental Response in Opposition to Defendant 3NT, LLC's Amended Motion for Summary Judgment" (ECF No. 73). The Court thus considers the deposition of Paul Dozier as evidence during its review of the Magistrate Judge's Report and Recommendation.

**D.  Analysis**

### 1.  Portions of the Report and Recommendation to Which the Parties Do Not Object

Neither Cervantes nor 3NT object to the Magistrate Judge's recommendations that 3NT's Amended Motion for Summary Judgment be granted as to Cervantes's ERISA § 510 claim for the April 10 Denial and as to Cervantes's ERISA §§ 502(a)(3) and 409(a) claims.  ECF Nos. 74 and 75.  Having carefully reviewed the Report and Recommendation as it applies to those claims, the Court concludes that the Magistrate Judge's findings are not clearly erroneous or contrary to law and the Magistrate Judge did not abuse his discretion.  The Court thus ACCEPTS the recommendations that 3NT's Amended Motion for Summary Judgment be GRANTED as to Cervantes's ERISA § 510 claim for the April 10 Denial and as to Cervantes's ERISA §§ 502(a)(3) and 409(a) claims.

### 2.  The Parties' Objections

As described, the parties object to several of the Magistrate Judge's recommendations concerning the disposition of Cervantes's ERISA claims.  For context, the Court starts with an overview.  ERISA is an employee protection statute.  Congress enacted ERISA to "protect . . . participants in employee benefit plans."  29 U.S.C. § 1001(b).  "One of the underlying principles of ERISA is to ensure that employee benefits are given as promised and as expected."  *High v. E-Systems, Inc.*, 459 F.3d 573, 576–77 (5th Cir. 2006).  To that end, Congress enacted numerous provisions that regulate employers' conduct, *e.g.*, ERISA § 510, 29 U.S.C. § 1140, and provide ERISA plan participants civil enforcement rights, *e.g.*, ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987).  Two of those provisions, and a related common law doctrine, are relevant here: ERISA §§ 510, 502(a)(1)(B), and ERISA-estoppel.

a. **Cervantes's ERISA § 510 Claim**

ERISA § 510 prohibits employers from interfering with an employee's exercise of rights under an ERISA-covered plan. Specifically, § 510 makes it unlawful for any person to "discharge, fine, suspend, expel, discipline, or discriminate against a [plan] participant or beneficiary for exercising any right to which [she] is entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140. To prevail on a § 510 claim, a plaintiff must show "(1) prohibited (adverse) employer action (2) taken for the purpose of interfering with the attainment of (3) any right to which the employee is entitled." *Bodine v. Emps. Cas. Co.*, 352 F.3d 245, 250 (5th Cir. 2003). This boils down to a requirement that a plaintiff show "some unscrupulous conduct or intentional act . . . on the part of the employer." *Id.*

The plan participant (or plaintiff) must first establish a prima facie case. *Stafford v. True Temper Sports*, 123 F.3d 291, 295 (5th Cir. 1997) (per curiam). To do so requires showing that the employer took an adverse action with the specific intent to interfere with the attainment of ERISA benefits. *Id.* Interference with benefits need not be the only reason the employer took an adverse action, *id.*, but the loss of benefits must not be merely "incidental" to the adverse action. *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 260 (5th Cir. 2001). A plaintiff can show specific intent through circumstantial evidence. *Stafford*, 123 F.3d at 295. If the employee succeeds in establishing a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the alleged adverse action. *Id.* If the employer meets its burden, the burden then once again shifts back to the plaintiff "to prove this reason is pretext and the real purpose [of the action] was denial of ERISA benefits." *Id.*

3NT argues that Cervantes fails to establish a genuine issue of material fact showing that it intentionally interfered with Cervantes's right to benefits under the Plan. Mot. at 8–10. Cervantes responds, in part, that she reported the truck accident and her injuries to her superiors

as required by the Plan, but that Zapata incompletely and inaccurately filled out her Injury

Report and would not let her correct it.  Resp. at 10–14.  In other words, Cervantes argues that

3NT (through Zapata) interfered with her right to benefits under the Plan.

 The Magistrate Judge concluded there is a genuine factual dispute as to whether Zapata's

alleged refusal to let Cervantes amend the Injury Report was an adverse action taken with the

intent to interfere with Cervantes's attainment of ERISA benefits.  R. & R. at 11.  3NT contests

both of those conclusions.  The Court overrules 3NT's objections.

### i.   Adverse Action

 Cervantes contends that Zapata's refusal to let her amend the Injury Report constitutes an

adverse action.  As the Magistrate Judge points out, the adverse action alleged here falls within

an atypical category of adverse actions because it does not relate to the alteration of employment

status.  R. & R. at 11–12 (explaining adverse action is typically termination of employment).

But ERISA § 510 is not limited to adverse employment actions.  Instead, § 510 prohibits

*interference*, "in various ways," with ERISA-protected rights.  *See Manuel v. Turner Indus. Grp.,*

*LLC*, 905 F.3d 859, 870–71 (5th Cir. 2018); *Mattei v. Mattei*, 126 F.3d 794, 804–06 (6th Cir.

1997) (explaining that § 510 should be read "to mean any adverse actions").  *But see Teumer v.*

*Gen. Motors Corp.*, 34 F.3d 542, 544–45 (7th Cir. 1994) (Section 510 protects against "only

changes in one's employment status").  The Court concludes that § 510's terms broadly cover

adverse actions that interfere with attainment of benefits, including "discrimination" defined as

an adverse action taken because of a participant's choice to seek benefits under an ERISA

protected plan.  *See, e.g.*, *Mattei*, 126 F.3d at 804–06; *Manuel*, 905 F.3d at 870–71.

 The Court agrees with Cervantes that Zapata's supposed refusal to let her amend the

Injury Report constitutes an adverse action.  The Plan requires employees to submit a written

report of injuries.  Mot. Ex. B-1 at 20.  Evidence suggests that it's the employee's responsibility

to complete the form describing her injuries.  Pl.'s Corrected Supp. Resp., ECF No. 73-1, Ex. P at 21:20–22:7, 24:11-18, 44:20–45:8.  3NT admits that the Injury Report would have fulfilled Cervantes's obligation to report her injuries in writing.  Mot. at 6.  But when Cervantes met with Zapata to complete the Injury Report, he had already filled it out.  Resp. Ex. F at 33:22–34:5.  Seeing that the information Zapata had written was incorrect and inconsistent, Cervantes asked if she could amend the Injury Report.  Resp. Ex. A ¶ 4.  It's not entirely clear what happened next, but a genuine dispute exists over whether Zapata refused to allow Cervantes to amend the Injury Report that he asked her to sign and agree to.  *Compare* Ex. A ¶ 4 *with* Resp. Ex. F 33:8–39:23 (Zapata unable to recall what he said to Cervantes).

This dispute must be resolved, at least in part, based on credibility determinations, which cannot be done on summary judgment evidence.  *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507 (5th Cir. 1988).  A reasonable jury could determine that Zapata refused to allow Cervantes to amend the Injury Report, and, if he did, this would constitute and adverse action for § 510 purposes because Cervantes was required to provide a written report of injuries before Cervantes would become eligible for benefits under the Plan.

### ii.    Specific Intent to Interfere

Section 510 requires a plaintiff to show the employer's specific intent to interfere with the attainment of benefits.  *Matassarin v. Lynch*, 174 F.3d 549, 569 (5th Cir. 1999).  Intent to interfere need not be the only reason for the employer's action, and the plaintiff can show intent by circumstantial evidence.  *Nero v. Industrial Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999).

Zapata knew that Cervantes was seeking medical benefits.  Resp. Ex. I.  Not only did she explicitly tell him that, *id.*, but Zapata also sent her to a medical center, Resp. Ex. E.  As described, Zapata prefilled Cervantes's Injury Report.  Cervantes sought to amend the Injury

- 11 -

Report to add additional injuries she allegedly suffered, but Zapata allegedly denied that request.[26]  Resp. Ex. A ¶ 4; Resp. Ex. F at 29:10-17; *see* Resp. Ex. I.  Evidence also suggests that Zapata knew that the Injury Report was required to obtain benefits.  Resp. Ex. F. at 9:19-23.  A reasonable jury could conclude that, as the day-to-day Plan Administrator, Resp. Ex. F. at 12:3–9 and 9:19-23, Zapata would have known that it may be a benefit to 3NT for Cervantes to seek fewer benefits under the Plan, *see* Jasso Depo., Resp. Ex. N at 14:15–16:11.

Moreover, there is evidence of a direct connection between the lack of a signed Injury Report and the denial of benefits.  Cervantes's refusal to sign the Injury Report that she has consistently maintained to be incomplete and inaccurate led directly to her denial of benefits.  Resp. Ex. K; Corrected Supp. Resp. Ex P at 25:20–26:9, 46:20-24 ("Q. . . If Ms. Cervantes had been allowed to fill out the form and submit it, is it your testimony that the claims would not have been denied?  A. Yes.").  Far from piling inference upon inference, as 3NT argues, Def. Objs. R. & R. at 3, Zapata's refusal to allow Cervantes to amend the Injury Report, viewed in the light most favorable to Cervantes, suggests Zapata may have at least intended in part to interfere with Cervantes's claim to ERISA benefits.

Because Cervantes establishes a prima facie case, the burden shifts to 3NT to show a legitimate, nondiscriminatory reason for its adverse action.  *Stafford*, 123 F.3d at 295.  Like the Magistrate Judge, R. & R. at 15, this Court concludes that 3NT has failed to meet its burden to show that Zapata's refusal to allow Cervantes to amend the Injury Report was based on legitimate, nondiscriminatory reasons.  In fact, 3NT does not attempt, in any of its filings, to justify Zapata's actions.  Mot. at 8–10; Reply at 1–2; Def. Objs. R. & R. at 3–4.  Cervantes has established a prima facie case, and because 3NT fails to show that its adverse action was

---

[26] Zapata also withheld medical insurance information from Cervantes, providing no explanation for doing so.  Resp. at 7; Resp. Ex. M.

legitimate and nondiscriminatory, the Court DENIES summary judgment as to Cervantes's ERISA § 510 claim related to the May 3 Denial.

### b.   Cervantes's ERISA § 502(a)(1)(B) Claim

ERISA § 502(a)(1)(B) provides an ERISA "participant or beneficiary" a right of action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  Succinctly, the purpose of § 502(a)(1)(B) is to provide a plan participant a right of action to seek benefits that were "promised to [her] under the terms of the plan [but were] not provided."  *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 210 (2004).  Section 502(a)(1)(B) claims are "generally limited to actions 'respecting . . .  the interpretation of plan documents and the payment of claims.'"  *Manuel*, 905 F.3d at 864 (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)) (cleaned up).  That is, the district court, in a § 502(a)(1)(B) action, reviews a benefit determination in light of the plan's terms.  *See Manuel*, 905 F.3d at 868.

### i.   Standard of Review

"Generally, in suits brought under § 502(a)(1)(B), district courts review the denial of benefits de novo.  But if the benefits plan . . . gives the administrator authority to determine eligibility for benefits or to construe the plan terms, the denial is reviewed for an abuse of discretion."  *Manuel*, 905 F.3d at 868 (cleaned up); *see also Aboul-Fetouh v. Emp. Benefits Comm.*, 245 F.3d 465, 471–72 (5th Cir. 2001) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989)).  The parties agree that the abuse of discretion standard controls in this case, *see* Mot. at 10–11; Resp. at 14; the Court also agrees and will thus review the claim administrator's determination for abuse of discretion.[27]

---

[27] The Magistrate Judge held that there is a genuine issue of material fact regarding whether 3NT, as Plan Administrator, was operating under conflict of interest.  R. & R. at 20.  If a plan administrator has a conflict of

Interpretation of ERISA plans are "governed in the first instance by the plain meaning of the plan language." *Gosselink v. AT&T, Inc.*, 272 F.3d 722, 726 (5th Cir. 2001) (quoting *Threadgill v. Prudential Sec. Grp., Inc.*, 145 F.3d 286, 292 (5th Cir. 1998)).  Court's review of a denial of benefits generally proceeds under a two-part test: "First, a court must determine the legally correct interpretation of the plan.  If the administrator did not give the plan the legally correct interpretation, the court must then determine whether the administrator's decision was an abuse of discretion." *Gosselink*, 272 F.3d at 726.  But even if the Court finds that the administrator interpreted the plan in a legally correct way, that does halt the inquiry. *E.g.*, *Baptist Mem'l Hosp.—De Soto, Inc. v. Crain Auto., Inc.*, 392 F. App'x 288, 296 (5th Cir. 2010) (per curiam) (unpublished) ("A plan administrator may abuse its discretion if it denied a claim for benefits on the basis of an unsupported factual determination, even if it otherwise acted pursuant to a legally correct interpretation of the plan.").  That is, the second prong of the test can operate independently of the first.

### ii.     Legal Correctness of the Administrator's Interpretation

Courts consider three factors when assessing the legal correctness of a plan interpretation: "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." *Gosselink*, 272 F.3d at 726 (citing *Wildbur*

---

interest—"meaning the administrator 'both evaluates claims for benefits and pays benefits claims'"—then courts give less deference to the benefit determination, though this does not alter the standard of review. *Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1027–28 (5th Cir. 2015) (quoting *Truitt v. Unum Life Ins. Co. of Am.*, 729 F.3d 497, 508 (5th Cir. 2013)).  Here, 3NT, through Zapata, acted as the Plan Administrator, but not the Claims Administrator. Resp. Ex. F. at 12:3–9, 9:19-23.  That is, 3NT did not participate in determining whether to grant or deny benefit claims under the Plan.  That said, as the Magistrate Judge pointed out, evidence suggests Zapata played a role that directly led to the Claim Administrator's denial of Cervantes's claim for benefits. *Supra*, Section II.D.2.a.  This suggests some potential conflict of interest. *See Hagen*, 808 F.3d at 1027–28.  The Court, however, need not further address this issue or determine whether less deference should be applied at the summary judgment stage because even if there were no conflict of interest, the Court would deny 3NT summary judgment on Cervantes's § 502(a)(1)(B) claim.

*v. ARCO Chem. Co.*, 974 F.2d 631, 637–38 (5th Cir. 1992)).  The parties here focus only on whether the Claim Administrator's interpretation is consistent with a fair reading of the plan. Mot. at 10–13; Resp. at 15; Reply at 2–3.  The Court will thus similarly limit its review to the second factor described in *Gosselink*.  *Langley v. Howard Hughes Mgmt. Co., LLC Separations Benefits Plan*, 694 F. App'x 227, 232 (5th Cir. 2017) (per curiam) (unpublished).

Three provisions of 3NT's Plan are particularly relevant to the analysis:

Reporting Requirement

A Participant must *immediately* report in writing any Accidental Injury . . . to his Supervisor or other person designated by the Company.  The Participant must report every Accidental Injury, regardless of the nature or severity.  Failure to immediately report an Accidental Injury . . . may subject the Participant to disciplinary action up to and including termination and preclusion of benefits. For purposes of this requirements "Immediately," with regard to an Injury due to an Accident . . . means no later than 24 hours after the end of the Participant's scheduled shift during which the Occurrence took place. . . .

Work Injury Benefit Plan, Mot. Ex. B-1 art. 3.1.

Accidental Injury

"Accidental Injury" means an injury to a covered Participant which: (1) was unforeseen and unexpected; (2) occurred at a specifically identifiable time and place; (3) occurred by chance, unexpectedly, and/or not in the usual course of events; (4) resulted directly in bodily injury to the covered Participant; (5) occurred in Scope of Employment; (6) occurred during the pendency of this Plan; and (7) for which medical treatment was initiated within 30 days of the injury producing event.  Accidental Injury does not include Occupational Disease or Cumulative Trauma.  Accidental Injury does not include injuries which arise from an accident or ordinary diseases of life to which the general public is exposed outside the Participant's assigned duties in his scope of employment.

*Id.* art. 1, p. 5.

Furnishing Requirement

When a Participant requests benefits, the Participant must furnish all information requested by the Plan Administrator, Claims Administrator or Third-Party Administrator.

*Id.* art. 2.15.

- 15 -

The Claim Administrator denied Cervantes's request for benefits on the ground that she "refus[ed] to report" her injuries in writing.  Adverse Benefit Determination (May 3, 2019), Mot. Ex. F at 2.  In doing so, the Claim Administrator pointed out that Cervantes did not "complete the reporting paperwork in connection with [her] injury," as 3NT twice requested of her.  *Id.*  It appears this reference is to Cervantes's refusal to sign the Injury Report which she contended was incomplete and inaccurate.  The administrative appeals committee upheld the Claim Administrator's decision on similar grounds.  Decision Concerning Appeal of Denial of Benefits (Jul. 3, 2019), Mot. Ex. H at 2.

3NT argues that the Claim Administrator properly denied Cervantes's claim for benefits because she failed to adhere to the express terms of the Reporting Requirement and Furnishing Requirement—that is, 3NT argues the Claim Administrator correctly interpreted the Plan and did not abuse its discretion in its interpretation.  Mot. at 12–13.  Specifically, 3NT asserts that the text messages Cervantes and her partner sent to Zapata and Jasso within 24 hours after the accident do not comply with the Reporting Requirement because the texts "are void of any information regarding Accidental Injuries." *Id.* at 13.  Additionally, 3NT asserts that Cervantes did not cooperate with the Claim Administrator because she failed to provide information the Claim Administrator requested, as she was required to do under the Furnishing Requirement.  *Id.* at 12–13.

Cervantes counters that the Plan does not define what constitutes a "report in writing." Resp. at 15.  A fair reading of the Plan, Cervantes says, includes text messages as a "writing." *Id.*  Cervantes also reiterates her point that she attempted, multiple times, to furnish all information regarding her injuries—in writing—but Zapata refused to allow her to make changes

to the Injury Report.  *Id.* at 16.  To Cervantes, reading the Plan as 3NT does would result in a

Plan requirement that a participant agree to false, misleading, or incomplete information.  *Id.*

   To start, the Court looks to the specific reasons the Claim Administrator denied

Cervantes's request for benefits.  As stated, the Claim Administrator noted Cervantes's failure to

complete the Injury Report as grounds for denial of benefits.  *See* Mot. Ex. F at 2.  The Claim

Administrator Appeals Committee was more explicit about its reasons for denial: Cervantes

failed to sign the Injury Report at Zapata's request.  *See* Mot. Ex. H at 2.  In doing so, the Claim

Administrator noted that Cervantes failed to comply with the Furnishing Requirement.  *Id.*; *see*

Mot. Ex. F.  The Claim Administrator thus reads the Furnishing Requirement—"the Participant

must furnish all information requested"—as being without exception.  That is, the Claim

Administrator would have Cervantes agree to a report that the Plan Administrator authored and

Cervantes disagrees with.

   The Court concludes that the Claim Administrator's reading of the Plan is patently unfair.

When an employee signs 3NT's Injury Report Form, they must "certify that the information is

true and correct" under the following warning: "ANY PERSON WHO KNOWINGLY

PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS IS GUILTY

OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN STATE

PRISON."  Employee Report of Injury, Mot. Ex. B-2.  To read the Plan as requiring a claim

administrator to deny benefits for failure to comply with the Furnishing Requirement by not

signing a report the employee believes is false and will potentially subject her to liability,

Corrected Supp. Resp. Ex P at 25:20–26:9, 46:20-24, would be inconsistent with a fair reading,

*Gosselink*, 272 F.3d at 726.

3NT also argues that Cervantes failed to comply with the Reporting Requirement because the text messages she sent within 24 hours of the accident do not list the injuries she sustained, as the Reporting Requirement mandates.  Mot. at 12–13.  While it's unclear whether the Claim Administrator ever considered this as grounds for denial, the Court will address the argument.  3NT's proposed reading of the plan is too strict.  And such a reading would be inconsistent with a fair reading of the Plan.  For one, Cervantes's partner informed 3NT, withing hours of the accident, that Cervantes was going to the doctor "to get a medical checkup."  Resp. Ex. D.  3NT knew that.  Resp. Ex. E.  A reasonable jury could conclude that Cervantes reported her accidental injuries to 3NT because she informed 3NT that she was going to receive medical care hours after an accident.

To be sure, that text message does not report "every Accidental Injury" within 24 hours.  But confining review of the legal correctness of the Claim Administrator's determination to only the terms of the Reporting Requirement would miss important context.  *Ellis v. Liberty Life Assur. Co. of Bos.*, 394 F.3d 262, 271 (5th Cir. 2004) (determining a fair reding by looking to "the context of the Policy as a whole").  While the Reporting Requirement mandates that an employee report her injuries within 24 hours, the definition of Accidental Injury contemplates that some injuries may not present within the first 24 hours after an accident.  Mot. Ex. B-1 art. 1, p.5 (defining "Accidental Injury," in part, as an injury "for which medical treatment was initiated within 30 days of the injury producing event").  3NT implicitly acknowledges that the 24-hour mandate in the Reporting Requirement should not be strictly construed because it offered Cervantes the opportunity to sign the Injury Report, which 3NT, and its Claim

Administrator, says would have fulfilled the Reporting Requirement.[28]  Mot. at 6; Corrected Supp. Resp. Ex. P at 41:4-13; *see also id.* at 25:20–26:9, 46:20-24.  This Court thus concludes, as the Magistrate Judge did, that a reasonable jury could determine that the Claim Administrator did not interpret the Plan in a legally correct manner.

### iii.        Whether the Claim Administrator Abused Its Discretion

In determining whether a claim administrator abuses its discretion by denying benefits, courts look to the evidentiary support for the claim administrator's decision.  *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009).  A claim administrator abuses its discretion "only where '[it] acted arbitrarily or capriciously.'"  *Id.* (quoting *Meditrust Fin. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999) (en banc)).  "A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and evidence."  *Id.* at 246–47.  The decision, however, must be supported by more than a scintilla of evidence; it must be supported by substantial evidence.  *White v. Life Ins. Co. of N. Am.*, 892 F.3d 762, 770 (5th Cir. 2018).  In the end, the abuse of discretion review asks: Did "the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end"?  *Holland*, 576 F.3d at 247 (quoting *Corry v. Liberty Life Assurance Co. of Bos.*, 499 F.3d 389, 398 (5th Cir. 2007)).

"Three factors are important in this analysis: (1) the internal consistency of the plan under the administrator's interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences

---

[28] The Court also notes that the 24-hour reporting requirement, if strictly construed, would potentially bar certain severely injured plan participants from obtaining medical benefits.  What would happen, for instance, if a plan participant were rendered unconscious for more than 24 hours?

of lack of good faith." *Gosselink*, 272 F.3d at 726.  Plaintiff bears the burden of proving abuse of discretion.  *White*, 892 F.3d at 770.

The Court concludes that a reasonable jury could determine that the Claim Administrator abused its discretion.  First, as discussed, an interpretation of the Plan that requires a participant to report all injuries within 24 hours would be too strict and would be internally inconsistent because the definition of "Accidental Injury" contemplates injuries that are realized within 30 days of the accident causing the injuries.  Mot. Ex. B-1 art. 1, p.5.  Second, Zapata, as the Plan Administrator, refused to allow Cervantes the opportunity to amend the Injury Report, which the Claim Administrator admits would have been sufficient to meet the Reporting Requirement. Corrected Supp. Resp. Ex. P at 41:4-13; *see also id.* at 25:20–26:9, 46:20-24.  And the Claim Administrator knew Cervantes wanted to amend the Injury Report that Zapata wrote.  *See id.* 41:4-9.  But the Claim Administrator denied Cervantes's benefits solely because the Injury Report lacked a signature.  *E.g., id.* at 14:4–15:15, 41:10-14.  This evidence suggests that the Claim Administrator did not have substantial evidence to support its denial of Cervantes's claim. *Holland*, 576 F.3d at 246–47.

In sum, the Court concludes that a reasonable jury could determine that the Claim Administrator failed to interpret the terms of the Plan in a legally correct manner and that it subsequently abused its discretion by denying Cervantes's claim for benefits.  Thus, the Court DENIES 3NT's motion for summary judgment on Cervantes's ERISA § 502(a)(1)(B) claim.

### c.  Plaintiff's ERISA Estoppel Claim

"To establish an ERISA-estoppel claim, the plaintiff must establish: (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances."  *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444–45 (5th Cir. 2005).

Cervantes argues that the Magistrate Judge erroneously concluded that she failed to raise a genuine issue of material fact on the material misrepresentation element of her ERISA-estoppel claim.  Pl. Obj., ECF No. 75, at 1–2.  The Magistrate Judge did not have the benefit of Cervantes's Corrected Supplemental Response (ECF No. 73-1) and its associated evidence that this Court now has.  R. & R. at 25 n.11; Pl. Obj. at 4–6.  Under the facts the Magistrate Judge was working with, this Court agrees with its determination.  Cervantes made no other argument in her response to 3NT's motion for summary judgment other than to argue that the Claim Administrator's April 10 Denial, which suggested she could obtain benefits with a pre-approved provider, and the Claim Administrator's subsequent denial on other grounds, were inconsistent and thus the April 10 Denial was a material misrepresentation.  Resp. at 19–20 (citing Resp. Exs. J, K).  The Magistrate Judge correctly concluded that Cervantes showed no material misrepresentation because the Plan clearly states that no payments are be made for medical expenses "excluded or not covered by [the] Plan."  R. & R. at 25 (quoting Work Injury Benefit Plan, Mot. Ex. C. art. 2.9).  The April 10 Denial does not change this fact; it does not alter the unambiguous terms of the Plan.

Even though this Court agrees with the Magistrate Judge on that determination, this Court reviews Cervantes's ERISA-estoppel claim de novo, 28 U.S.C. § 636(b)(1), with the benefit of additional evidence, *supra* at Section II.C.

The Court first addresses material misrepresentation.  "A misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision."  *Id.* at 445 (cleaned up).  Material misrepresentations can be made in the form of misrepresenting terms of the plan, like benefits owed, *Mello*, 431 F.3d at 445, or by misrepresentative conduct overtime, *see High*, 431 F.3d at 579–80 (assuming material

misrepresentation), such as untrue and persistent notifications confirming benefit elections and the amount a participant paid for those benefits, *Talasek v. Nat'l Oilwell Varco, LP*, 16 F.4th 164, 168 (5th Cir. 2021).  Material misrepresentations can be made through assurances or informal documents; that is, documents other than the plan.  *Talasek*, 16 F.4th at 168; *Mello*, 431 F.3d at 445.

Cervantes argues in her Corrected Supplemental Response, and objections to the Report and Recommendation, that Zapata, the Plan Administrator, told Cervantes that she could not amend the Injury Report.  Corrected Supp. Resp. at 6–7; Pl.'s Objs. at 4–6.  This, she argues, constitutes a material misrepresentation.  Corrected Supp. Resp. at 6–7; Pl.'s Objs. at 4–6.  The Court agrees.  Evidence suggests that Zapata told Cervantes that signing the Injury Report was a necessary precondition to receiving benefits under the Plan.  Resp. Ex. A ¶ 4; *see also* Resp. Ex. F at 33:8–39:23 (Zapata unable to recall what he said to Cervantes).  But when Cervantes asked to make changes to the Injury Report, Zapata said both he and Cervantes were powerless to make changes.  Resp. Ex. H.  Understandably, Cervantes did not sign a form she thought was inaccurate and incomplete.  Resp. Ex. A. ¶ 4.  The misrepresentation that Cervantes could not write her own Injury Report, and consequently, her decision not to sign it, led directly to the denial of her benefits.  *See, e.g.*, Resp. Ex. K; Pl. Corrected Supp. Resp. Ex P at 25:20–26:9, 46:20-24.  The Court thus concludes that a reasonable jury could determine that Zapata misrepresented what power Cervantes had over the Injury Report and that his misrepresentation was material.

Next, the Court addresses the reasonable and detrimental reliance element.  Whether reliance is reasonable is determined by comparing the misrepresentation to the terms of the plan. A plan participant's reliance is *un*reasonable if it's based on assurances or informal documents

that contradict the "unambiguous Plan terms." *See Mello*, 431 F.3d at 445–47; *Talasek*, 16 F.4th at 169.  This precept is grounded in the idea that ERISA-estoppel would be inconsistent with the ERISA statute if the estoppel theory could "override the clear terms of plan documents."  *High*, 431 F.3d at 580 (quoting *Sprague v. GMC*, 133 F.3d 388, 404 (6th Cir. 1998)); *see also In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 58 F.3d 896, 902, 907 n.20 (3d Cir. 1995).

As the Court previously suggested in this Opinion, the relevant terms of the Plan are ambiguous.  *Supra* Section III.D.2.b.  For example, the Plan requires "[a] Participant [to] *immediately* report in writing any Accidental Injury."  Mot. Ex. B-1 art. 3.1.  But the Plan does not define what constitutes a sufficient "writing."  *See generally* Mot. Ex. B-1; Resp. Ex. B.  Left with that uncertainty, a reasonable jury could conclude that Cervantes reasonably relied on Zapata's representation that she needed to submit an injury report that he authored, Resp. Ex. A ¶ 4; *see also* Corrected Supp. Resp. Ex. P at 21:20–22:7, 24:11-18, 44:20–45:8—an injury report she was not allowed to amend, Resp. Ex. A. ¶ 4.  That jury could also conclude that Cervantes relied on Zapata's representation to her detriment because evidence suggests that it was her failure to sign the Injury Report that led the Claim Administrator to deny her benefits.  Corrected Resp. Ex. P at 14:4–15:15, 41:4-14.

The Court finally turns to the extraordinary circumstances element.  The Fifth Circuit has not conclusively defined what "extraordinary circumstances" are, but the court generally looks to the Third Circuit's approach to analyzing this claim.  *Cell Sci. Sys. Corp. v. La. Health Serv.*, 804 F. App'x 260, 266 (5th Cir. 2020) (per curiam) (unpublished).  Under the combination of the Circuits' guidance, extraordinary circumstances are typically "those that involve bad faith, fraud, or concealment, as well as possibly when 'a plaintiff repeatedly and diligently inquired about

benefits and was repeatedly misled' or when 'misrepresentations were made to an especially vulnerable plaintiff.'" *Cell Sci. Sys.*, 804 F. App'x at 600 (quoting *High*, 459 F.3d at 580 n.3).

On this element, Cervantes makes no argument and points to no evidence in support of her ERISA-estoppel claim. *See* Resp. at 19–20; Corrected Resp. at 6–7; Pl.'s Objs. That alone is sufficient to grant 3NT's motion for summary judgment on Cervantes's ERISA-estoppel claim. *See, e.g.*, *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 (5th Cir. 2016) ("As a general rule, when evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.").

Even if the Court did not grant summary judgment on these grounds, the record does not support a finding of a genuine factual issue over whether this case is one of extraordinary circumstances. In the Court's review of the record, it sees no evidence of bad faith, fraud, concealment or that Cervantes repeatedly and diligently inquired about benefits only to be misled. *See, e.g.*, *Cell Sci. Sys.*, 804 F. App'x at 600; *High*, 459 F.3d at 580 n.3; *Khan v. Am. Int'l Grp., Inc.*, 654 F. Supp. 2d 617, 629–30 (S.D. Tex. 2009). Thus, the Court GRANTS summary judgment as to Cervantes's ERISA-estoppel claim.

### III.    CONCLUSION

**IT IS ORDERED** that Plaintiff Brenda Isabel Cervantes's "Motion for Leave to File Corrected Supplemental Response in Opposition to Defendant 3NT, LLC's Amended Motion for Summary Judgment" (ECF No. 73) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Brenda Isabel Cervantes's "Objections to Report and Recommendations of the Magistrate Judge" (ECF No. 75) and Defendant 3NT LLC's

"Objections to the Report and Recommendations of the Magistrate Judge" (ECF No. 74) are

**OVERRULED**.

       **IT IS FURTHER ORDERED** that Judge Robert F. Castañeda's Report and

Recommendations (ECF No. 72) are **ACCEPTED**.

       **IT IS FURTHER ORDERED** that Defendant 3NT LLC's "Amended Motion for

Summary Judgment" (ECF No. 53) is **GRANTED IN PART, DENIED IN PART**:

- **GRANTED** with respect to Plaintiff's ERISA § 510 claim only as it applies to the April 10 Denial.

- **DENIED** with respect to Plaintiff's ERISA § 510 in all other respects.

- **DENIED** with respect to Plaintiff's ERISA § 502(a)(1)(B) claim.

- **GRANTED** with respect to Plaintiff's ERISA §§ 502(1)(3) and 409(a) claims.

- **GRANTED** with respect to Plaintiff's ERISA-estoppel claim.

**So ORDERED and SIGNED this 29th day of June 2022.**

_____
**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**